**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MIDDLE CREEK COAL COMPANY; OLD
REPUBLIC INSURANCE COMPANY,
Petitioners,

v.

No. 95-1668

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
WHEELER BLANKENSHIP,
Respondents.

On Petition for Review of an Order
of the Benefits Review Board.
(92-1799-BLA)

Argued: March 7, 1996

Decided: July 11, 1996

Before RUSSELL and WILKINS, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Mark Elliott Solomons, ARTER & HADDEN, Washing-
ton, D.C., for Petitioners. Miller Kent Carter, BRANHAM & CAR-
TER, P.S.C., Pikeville, Kentucky, for Respondents. **ON BRIEF:**
Laura Metcoff Klaus, ARTER & HADDEN, Washington, D.C., for

Petitioners. William Lawrence Roberts, Pikeville, Kentucky, for Respondent Blankenship.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellant Middle Creek Coal Company appeals a decision by the Benefits Review Board affirming an order by the Administrative Law Judge awarding benefits to Wheeler Blankenship under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945. Middle Creek argues that the Administrative Law Judge breached his duty of explanation by failing to explain why he credited certain doctors' opinions over others. Because we find that the Administrative Law Judge explained his decision and that there was substantial evidence to support the decision, we affirm.

I.

Wheeler Blankenship worked as a coal miner for nineteen years and was a miner for Middle Creek from 1979 until November, 1983. Blankenship filed a claim under the Black Lung Benefits Act in 1985. The record contains 107 interpretations of eighteen x-rays, eighteen pulmonary function studies, eleven blood gas studies, and a multitude of medical opinions from twelve doctors. The ALJ found that the x-ray evidence was preponderantly negative for pneumoconiosis. This finding has not been challenged. The ALJ instead relied on 20 C.F.R. § 718.202(a)(4) to find that Blankenship suffered from legal pneumoconiosis. Section 718.202(a)(4) provides that a determination of the existence of pneumoconiosis may be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, finds that a miner suffered from pneumoconiosis.

2

The ALJ provided a summation of all the medical reports in his order. Dr. Clarke, Blankenship's treating physician, found that Blankenship was suffering from pneumoconiosis and was totally disabled. This finding was supported by Dr. Baxter, also a treating physician, and Drs. Modi, Lee, and Nash. Drs. Penman and Wright found that Blankenship had pneumoconiosis. Drs. Mettu, Garzon, Dahhan, Stewart, and Fino found that Blankenship did not have pneumoconiosis.

II.

This court reviews factual findings of the ALJ to determine whether they were based on substantial evidence in the record. Toler v. Eastern Associated Coal Co., 43 F.3d 109, 114 (4th Cir. 1995). This court reviews questions of law de novo. Id. Substantial evidence has been described as "`more than a scintilla but less that a preponderance,'" and is "`such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 380 (4th Cir. 1994) (citations omitted). "We must defer to the ALJ's credibility determinations and inferences from the evidence, despite our perception of other, more reasonable conclusions from the evidence." Id. "Subject to the substantial evidence requirement, . . . `[t]he ALJ has sole power to make credibility determinations and resolve inconsistencies in the evidence.'" Grizzle v. Pickands Mather Co., 994 F.2d 1093, 1096 (4th Cir. 1993).

Middle Creek maintains that the ALJ did not explain his decision and found pneumoconiosis only because more doctors found it than did not. This court has fully explained an ALJ's duty in rendering a decision:

> An ALJ's decision is statutorily required to include a discussion of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law or discretion presented on the record." Strict adherence to this statutorily-imposed obligation is "critical to the appellate review process. . . . The courts have respected this requirement by remanding cases where the reasoning for the a.l.j.'s[sic] conclusion is lacking and therefore presents inadequate

3

information to accommodate a thorough review.""Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, . . . an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." This court has long required specific references to the evidence supporting an ALJ's decision as part of the ALJ's "duty of explanation." Conversely, when faced with evidence in the record contradicting his conclusion, an ALJ must affirmatively reject that contradictory evidence and explain his rationale for so doing.

See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994). "[W]e must ask whether the ALJ examined the evidence and provided a satisfactory explanation of the decision including a `rational connection between the facts found and the choice made.'" Brazzalle v. Director, OWCP, 803 F.2d 934, 936 (8th Cir. 1986).

At one section of his order, the ALJ merely listed which doctors diagnosed pneumoconiosis and which did not and then stated that "[s]ince a preponderance of the medical opinion evidence supports a determination that claimant is suffering from coal worker's pneumoconiosis, I find that claimant has established the existence of pneumoconiosis pursuant to Section 718.202(a)(4)." If this had been the only explanation offered by the ALJ, Middle Creek would be correct to argue that the ALJ did not fulfill his duty of explanation. However, during his discussion of Blankenship's disability, the ALJ did explain why he gave more credence to some doctors' findings of both pneumoconiosis and total disability over other doctors' findings:

> I give great weight to the opinions of the treating physicians as they have the opportunity to see and treat the Claimant on an ongoing basis as opposed to isolated disability evaluations. The opinions of Drs. Baxter and Clarke are supported by the medical opinions of Drs. Modi and Nash who also found Claimant to be totally disabled. . . . Dr. Nash noted moderate dyspnea to be present even at rest, at the time he examined Claimant in July of 1990. He also found no other cause for Claimant's pulmonary problems other than his

4

dust exposure during his coal mine employment. As all of the physicians noted, Claimant has never smoked cigarettes.

Drs. Garzon, Dahhan, Stewart and Fino concluded that Claimant was not totally disabled due to any pulmonary or respiratory impairment. In addition, all failed to diagnose even the existence of pneumoconiosis. As main support for their opinion regarding lack of disability, they cite the normal pulmonary function and blood gas tests. I have considered their arguments and the impressive qualifications of Drs. Dahhan, Stewart and Fino. However, I do not feel they adequately explain Claimant's consistent complaints of dyspnea and cough which were recorded at the time of each physical examination, as well as his testimony at hearing which I found to be credible. Further, no alternative cause for Claimant's complaints has been adequately addressed, especially in light of the fact that he has never smoked cigarettes.

As indicated earlier I give great weight to the opinions of Claimant's treating physicians, Drs. Baxter and Clarke, who had the opportunity to treat and examine the Claimant on a variety of occasions. I find their opinions to be the most persuasive opinions in the record on the issue of Claimant's total disability. Their opinions are supported by the medical opinions of Drs. Nash and Modi and are consistent with the opinions of Drs. Lee and Penman. The conclusions of Drs. Clarke and Baxter are also supported by their findings on physical examination as well as Claimant's testimony regarding his symptoms.

The ALJ obviously found reasons, other than counting noses, to believe the opinions of Blankenship's doctors. The ALJ relied on the fact that Dr. Clarke was the treating physician."The opinion of a treating physician is entitled to great weight, though it is not dispositive," Thorn v. Itmann Coal Co., 3 F.3d 713, 717 n.3 (4th Cir. 1993), even if the treating physician is not as highly qualified as other physicians in the record. Grigg v. Director, OWCP, 28 F.3d 416, 420 (4th Cir. 1994). The ALJ, while recognizing the excellent credentials of Middle Creek's doctors, discounted the opinions of these doctors

5

because their findings did not adequately explain Blankenship's shortness of breath and cough.

This court does not have to agree with the findings of the ALJ in order to affirm. There is such relevant evidence on the record that a reasonable mind might accept as adequate to support a finding of pneumoconiosis and total disability. Also, the ALJ discussed why he relied on certain doctors opinions over others and this was sufficient to satisfy the ALJ's duty of explanation.

Middle Creek raises the issue that some of Blankenship's doctors have been in trouble with the law. The ALJ recognized this as to Dr. Modi and stated that he credited Dr. Modi's opinion only insofar as it was supportive of other medical opinions in the record. While we believe that an ALJ should give a doctor convicted of filing false claims or giving false information in connection with black lung cases little or no credibility at all, there were other doctors here who were not accused of anything on which the ALJ could and did rely.

Because the ALJ explained his decision and because that decision was supported by substantial evidence, the ruling of the Board affirming the ALJ is

AFFIRMED.

6