**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JANIE L. BRYANT, Widow of Robert
C. Bryant,
<u>Petitioner,</u>

v.

No. 97-2620

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR,
<u>Respondent.</u>

On Petition for Review of an Order of the
Benefits Review Board.
(97-154-BLA)

Argued: March 1, 1999

Decided: July 29, 1999

Before NIEMEYER and KING, Circuit Judges,
and LEE, United States District Judge
for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion. Judge King wrote a dis-
senting opinion.

_____

**COUNSEL**

**ARGUED:** Martin Douglas Wegbreit, CLIENT CENTERED
LEGAL SERVICES OF SOUTHWEST VIRGINIA, INC., Castle-

wood, Virginia, for Petitioner. Barry H. Joyner, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent. **ON BRIEF:** Marvin Krislov, Deputy Solicitor for National Operations, Donald S. Shire, Associate Solicitor, Christian P. Barber, Counsel for Appellate Litigation, Gary K. Stearman, Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Janie Bryant, on behalf of Robert Bryant, a former miner, petitions for review of a decision of the Benefits Review Board ("Board") affirming the administrative law judge's ("ALJ") denial of Mr. Bryant's application for black lung benefits.[1] Ms. Bryant sought benefits pursuant to the Black Lung Benefits Act of 1969 ("Act"), which awards benefits to persons who are totally disabled due to pneumoconiosis and to certain survivors of persons whose death was caused by pneumoconiosis. 30 U.S.C. §§ 901, et seq. (1994), as amended. The ALJ reviewed this claim under 20 C.F.R. § 718 (1998), of the applicable regulations, and found that the evidence of record was sufficient to establish pneumoconiosis arising out of coal mine employment and a totally disabling respiratory impairment. Benefits were denied based on the ALJ's findings that Bryant was unable to prove that pneumoconiosis caused or contributed to his totally disabling respiratory impairment.

_____

[1] Mr. Bryant died during the prosecution of this case below.

2

I.

In this case, the evidentiary dispute revolves around the ALJ's assessment of Drs. Chithambo, Abernathy, and Spagnolo's opinions regarding whether the deceased miner had pneumoconiosis and whether it contributed to total respiratory disability. Dr. Chithambo submitted the only evidence tending to link the miner's pneumoconiosis to his disability. He attributed the miner's pulmonary impairment to coal dust exposure and cigarette smoking. However, the doctor did not separate the relative contributions of the two. Dr. Chithambo's opinion conflicted with those of Drs. Abernathy and Spagnolo, who both opined that the miner's respiratory problems were solely attributable to his history of smoking two packs of cigarettes daily for forty to forty-five years, combined with his obesity (70 inches tall and 240 lbs.) and heart problems.

In rejecting Dr. Chithambo's opinion regarding the etiology of the miner's disability, the ALJ noted that Dr. Chithambo only reported that Mr. Bryant smoked one or two packs of cigarettes daily until one year prior to the date of his report. However, the report did not indicate how long the miner had engaged in smoking. The ALJ noted that Dr. Chithambo's failure to consider the miner's extensive smoking history and "factor this crucial medical fact into his conclusion . . . undermines the reliability of his conclusion [that pneumoconiosis contributed to disability]."

On appeal, Ms. Bryant argues that the ALJ's comment"perhaps he [Dr. Chithambo] did not know," indicates that the ALJ never resolved whether Dr. Chithambo relied on an inaccurate smoking history. Moreover, she contends, because the doctor's report reflects that he was aware the miner smoked, it could be inferred that he was aware of the miner's complete smoking history.

II.

The standard of review is whether the ALJ's factual findings were based upon substantial evidence in the record. Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658 (4th Cir. 1995). The Court must affirm the Board's decision if it properly decided that the ALJ's decision is supported by substantial evidence

3

and is in accordance with the law. Id. at 659. The Court must not set aside a factual finding simply because it finds a different conclusion more reasonable or more strongly supported by the evidence. Id.

An ALJ may properly reject an opinion finding an impairment to coal dust exposure where that opinion is based on an inaccurate smoking history. Risher v. Office of Workers' Compensation Programs, 940 F.2d 327, 330-31 (8th Cir. 1991) (upholding ALJ's rejection of an opinion where physician believed miner smoked for only fifteen years but evidence showed smoking history of fifty years). An ALJ may also properly reject an opinion which fails to adequately explain the reasons for the physician's conclusions. Id. at 331.

In the judgment of the ALJ, Dr. Chithambo's opinion failed to take into account the claimant's long smoking history. Dr. Chithambo only indicated that Mr. Bryant smoked one to two packs of cigarettes a day up to one year prior to the filing of his report. However, he did not address the length of time Mr. Bryant smoked. According to the reports of Dr. Buddington and Dr. Abernathy, Mr. Bryant's smoking history spanned forty to forty-five years. Due to the substantial length of the miner's smoking history, the ALJ properly viewed such history to be a "crucial medical fact." The ALJ reasonably determined that Dr. Chithambo's report provided no basis for inferring that he was aware of the extent of the miner's smoking history. [2] Because Dr. Chithambo's opinion may have been based on misinformation or incomplete information, we conclude that the ALJ did not err in rejecting Dr. Chithambo's diagnosis.

Contrary to Ms. Bryant's suggestion, reliance on an inaccurate smoking history provides a sufficient basis for entirely discrediting Dr. Chithambo's opinion concerning causation. Because Dr. Chithambo's opinion may have been based on misinformation, the reliability of his opinion was undermined, much the same way that an opinion

_____

[2] The Court will not assume that Dr. Chithambo knew of Mr. Bryant's smoking history simply because Mr. Bryant told two other doctors about a forty to forty-five year smoking history, particularly when he met with those doctors several years before meeting with Dr. Chithambo. Petitioner's Opening Brief, at 18.

4

is undermined where it is based on invalid objective data. See e.g., Lane v. Union Carbide Corp., 105 F.3d 166, 173 (4th Cir. 1997) (holding that ALJ properly rejected opinions based on invalid objective studies). Even if Dr. Chithambo's report did reflect the miner's smoking history, the ALJ indicated that the report would still have little value because it provides no discussion of the impact of that history on the miner's impairment. Essentially, therefore, the ALJ found Dr. Chithambo's finding of causation to be unexplained. Our review of Dr. Chithambo's report discloses that this conclusion is supported by substantial evidence.

To establish entitlement to benefits under the Act, a miner must prove that he has pneumoconiosis, that the disease was caused by his coal mine employment, and that he is totally disabled due to the disease. Doss, 53 F.3d at 658. Bryant was required to prove each element of his case by a preponderance of the evidence. Director, Office of Workers' Compensation Program v. Greenwich Collieries, 512 U.S. 267, 270-81 (1994). Dr. Chithambo's report was the only physician's opinion that found pneumoconiosis and concluded that it was caused by coal mine employment and contributed to total respiratory disability. Without that opinion, Bryant cannot meet his burden. Because the ALJ properly found Dr. Chithambo's opinion regarding causation to be unreliable and unexplained, Bryant's entitlement is precluded.[3] Thus, it is not necessary for the Court to address Ms. Bryant's allegations that the ALJ erred by crediting the reports of those physicians who found no link between pneumoconiosis and the miner's disability,[4]

_____

[3] The dissent primarily focuses on the question of causation in regards to whether the pneumoconiosis caused the total disability. See Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990) (holding that the requirement that the claimant be totally disabled "due to" pneumoconiosis could be satisfied by establishing that pneumoconiosis was a contributing cause of his total disability). However, the majority does not reach this issue because Dr. Chithambo's opinion was discredited by the ALJ. The ALJ concluded that Dr. Chithambo's opinion concerning the connection of Bryant's total disability with his pneumoconiosis was unreliable because he did not properly take into account Bryant's extensive smoking history. Thus, Bryant never establishes that his total disability was due to the disease as required under Doss. 53 F.3d at 658. Without this evidence, it is not necessary to reach the causation question.
[4] We disagree with the dissent's argument that the ALJ did not identify specific and persuasive reasons why the opinions of Drs. Spagnolo and

nor that the ALJ and the Board applied the wrong causation standard. Our disposition also renders it unnecessary to resolve the respondent's contentions that the ALJ erred by finding pneumoconiosis in this case.

Accordingly, the Board's decision upholding the ALJ's denial of benefits is affirmed.

AFFIRMED

KING, Circuit Judge, dissenting:

The ALJ applied the wrong causation standard, thus made irrelevant findings. The BRB likewise applied an erroneously high standard of causation to Mr. Bryant's evidence. As a result, I would remand this case for consideration of the evidence under the proper standard.

A miner seeking to show that his total disability is due to pneumoconiosis must prove only that "his pneumoconiosis was at least a contributing cause of his total disability." Robinson v. Pickands Mather & Co., 914 F.2d 35, 38 (4th Cir. 1990). Instead of analyzing Dr. Chithambo's opinion under the proper "contributing cause" standard, the ALJ discredited that opinion because Dr. Chithambo failed to explain why Mr. Bryant's pneumoconiosis could be totally disabling, in and of itself: "Dr. Chithambo does not explain whether that level

_____

Abernathy should be credited despite their judgment that Bryant did not suffer from black lung disease. Indeed, the ALJ's decision is replete with references to the quality and kind of medical tests and findings supporting the two doctors' opinions, as well as their qualifications. Specifically, as to Dr. Spagnolo, the ALJ noted his experience in the field of pulmonary disease and the fact that Dr. Spagnolo had considered Bryant's extensive smoking history. (J.A. at 19-20). Thus, the ALJ concluded that Dr. Spagnolo's opinion was "entitled to greater weight on the question of etiology." (J.A. at 20). The ALJ stated that the "question of etiology of a disability depends primarily on the expert's information and medical/scientific judgment rather than a personal one-on-one examination . . . ." (J.A. at 20). As they reflected knowledge of the miner's complete smoking information, Drs. Spagnolo and Abernathy's opinions were properly considered by the ALJ.

6

[i.e., minimal] of pneumoconiosis can result in respiratory impairment at a totally disabling level." J.A. 20 (emphasis added).

On appeal, the BRB recognized that the ALJ had misstated the causation standard. But instead of correcting the ALJ's mistake, the BRB compounded this error by rephrasing the standard in a different--but equally wrong--fashion: "We agree with the Director that the administrative law judge was not stating that minimal pneumoconiosis could never be totally disabling, but instead merely noted that Dr. Chithambo did not explain how . . . [Mr. Bryant's] pneumoconiosis was totally disabling in this case." J.A. 4 (emphasis added). The BRB thus applied the wrong causation standard as well, requiring Mr. Bryant's pneumoconiosis itself to be totally disabling, rather than a contributing cause of his disability.

Because both the ALJ and the BRB asked the wrong causation questions, their answers to those questions--whether well-supported or not--are irrelevant.[1] Additionally, the alleged flaw in Dr. Chithambo's opinion--his failure to write down exactly how long Mr. Bryant had smoked--becomes less important if viewed under the proper "contributing cause" standard. That is, a rational ALJ could credit Dr. Chithambo's conclusion that pneumoconiosis contributed to Mr. Bry-

_____

[1] The majority claims not to reach the question "whether the pneumoconiosis caused [Mr. Bryant's] total disability." Ante at 5 n.3. As I read its opinion, however, the majority does address and resolve the causation issue: "Thus, Bryant never establishes that his total disability was due to the disease . . . ." Ante at 5 n.3. The majority's treatment of this issue demonstrates that, under the circumstances, it is impossible not to address the causation question. I simply conclude that, in deciding this unavoidable issue, the ALJ and the BRB failed to weigh Mr. Bryant's proof against the appropriate "contributing cause" standard, thus made legally irrelevant findings.

Nor can the majority cure the errors below by independently reviewing the record under the correct standard and making its own causation findings. As an appellate court, we are powerless to affirm on the basis of findings that, while plausible, were never made by the ALJ: "Because the ALJ has not yet made such a finding, we cannot affirm on the basis that he could have done so." Toler v. Eastern Associated Coal Co., 43 F.3d 109, 115 (4th Cir. 1995) (emphasis added).

7

ant's disability, even though Dr. Chithambo's opinion may be ambiguous as to the extent he believed smoking to be an additional contributing cause.

The ALJ's errors in evaluating and discrediting Dr. Chithambo's opinion are critical because of the fatal flaws in the medical opinions that the ALJ <u>did</u> credit. Unlike the ALJ and Dr. Chithambo, neither Dr. Spagnolo nor Dr. Abernathy concluded that Mr. Bryant suffered from pneumoconiosis. As a result, the ALJ was barred from crediting the opinions of either Dr. Spagnolo or Dr. Abernathy"unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon her disagreement with the ALJ's finding as to either or both of [disability or causation]." <u>Toler v. Eastern Associated Coal Co.</u>, 43 F.3d 109, 116 (4th Cir. 1995). The ALJ identified no "specific and persuasive reasons" why the opinions of Drs. Spagnolo and Abernathy should be credited despite their disagreement with the ALJ as to the presence of pneumoconiosis.**2**  The ALJ's decision to credit those opinions therefore violated <u>Toler</u>.

_____

**2** The majority concludes that Dr. Spagnolo's credentials and knowledge of Mr. Bryant's full smoking history constituted "specific and persuasive" reasons under <u>Toler</u>, permitting the ALJ to credit him despite his failure to diagnose pneumoconiosis or find Mr. Bryant totally disabled. <u>Ante</u> at 5-6 n.4. I disagree. First, every doctor in this field should know a claimant's smoking history. If such knowledge is sufficient to avoid the usual credibility rule in <u>Toler</u>, then the exception could be invoked in almost every case to allow an ALJ to credit doctors who have erroneously failed to diagnose pneumoconiosis or total disability.

Second, I disagree with the majority's conclusion that a doctor's credentials can constitute "specific and persuasive" reasons to credit her under <u>Toler</u>. In essence, the majority reasons that, when deciding whether pneumoconiosis caused a miner's total disability, an ALJ may properly credit an experienced doctor who erroneously failed to diagnose both pneumoconiosis and total disability, simply because this erring doctor is more experienced than the doctor who got both of these diagnoses right in this case. The majority's position is troubling. Because no two doctors have identical credentials, every case will include one doctor whose credentials are arguably superior to those of her opposite number. Consequently, a "better credentials" exception to <u>Toler</u>--like a "smoking

8

Consequently, the record before the ALJ was devoid of any legally credible medical opinion contradicting Dr. Chithambo's conclusion that pneumoconiosis contributed to Mr. Bryant's total disability. I would remand to have this lone credible opinion evaluated under the proper "contributing cause" standard.

I respectfully dissent.

_____
history knowledge" exception--could be invoked in almost every case, permitting this exception to swallow the rule.

Finally, we cannot overlook the reality that experts with more impressive credentials usually charge higher fees, thus are more likely to be hired by wealthier parties. As a result, the majority's position would, in some cases, permit rich litigants--rarely black lung claimants--to buy their way around the Toler rule.

9