**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PEABODY COAL COMPANY,
Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS'

COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR;
CLIFFORD PRIDEMORE,
Respondents.

No. 99-2261

On Petition for Review of an Order
of the Benefits Review Board.
(No. 98-272-BLA)

Argued: June 6, 2000

Decided: July 20, 2000

Before LUTTIG, TRAXLER, and KING, Circuit Judges.

_____

Reversed and remanded by unpublished per curiam opinion. Judge
King wrote a dissenting opinion.

_____

**COUNSEL**

**ARGUED:** Mark Elliott Solomons, ARTER & HADDEN, L.L.P.,
Washington, D.C., for Petitioner. Perry Duane McDaniel, CRAN-
DALL, PYLES, HAVILAND & TURNER, L.L.P., Charleston, West
Virginia, for Respondents. **ON BRIEF:** Laura Metcoff Klaus,
ARTER & HADDEN, L.L.P., Washington, D.C., for Petitioner.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

Peabody Coal Co. ("Peabody") petitions for review of a Benefits Review Board ("Board") decision affirming an administrative law judge's ("ALJ") decision to award black lung benefits to Clifford Pridemore, a former coal miner. The ALJ evaluated this claim under 20 C.F.R. pt. 718 (1999), and concluded that Pridemore had established that he suffered from totally disabling pneumoconiosis arising out of his coal mine employment. In reviewing the Board's decision, we must affirm if the Board properly decided that the ALJ's decision is supported by substantial evidence and is in accordance with the governing law. See Doss v. Director, Office of Workers' Compensation Programs, 53 F.3d 654, 658-59 (4th Cir. 1995).

To establish his entitlement to benefits under the eligibility regulations set out in Part 718, a miner must prove: "(1) that he has pneumoconiosis; (2) that the disease arose out of coal mine employment; (3) that he is totally disabled from performing his usual coal mining work; and (4) that his pneumoconiosis is a contributing cause of his total disability." Lane v. Union Carbide Corp., 105 F.3d 166, 170 (4th Cir. 1997). Although Peabody concedes that Pridemore is unable to perform his usual coal mining work, it contends that the medical opinion evidence fails to link Pridemore's impairment to coal dust exposure.

Peabody argues that, in concluding otherwise, the ALJ failed to comply with the Administrative Procedure Act ("APA"), 5 U.S.C.A. §§ 551-559 (West 1996 & Supp. 1999), which governs decisions under the Black Lung Benefits Act. See Director, Office of Workers' Compensation Programs v. Greenwich Collieries, 512 U.S. 267, 271 (1994). Under the APA, the ALJ must first consider whether the medical evidence presented is "reliable, probative, and substantial." 5 U.S.C. § 556(d); see United States Steel Mining Co. v. Director,

2

Office of Workers' Compensation Programs, 187 F.3d 384, 389 (4th Cir. 1999). The ALJ must also provide a reasonable, logical explanation as to why she credits or discredits the relevant evidence. See Milburn Colliery Co. v. Hicks, 138 F.3d 524, 536 (4th Cir. 1998); Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997); See v. Washington Metro. Area Transit Auth., 36 F.3d 375, 384 (4th Cir. 1994).

Peabody argues that Dr. Rasmussen's opinion, upon which the ALJ principally relied, did not qualify as "reliable, probative, and substantial." 5 U.S.C. § 556(d). We agree. Dr. Rasmussen's conclusion that Pridemore suffers from pneumoconiosis was based solely on Pridemore's lengthy coal mine employment history and on several positive chest x-ray readings. Neither of these factors provides substantial evidence to support the ALJ's causation findings. The ALJ specifically found the "x-ray evidence insufficient to meet the preponderance of the evidence standard of proof." Once the x-ray evidence is removed, the sole basis for Dr. Rasmussen's opinion is Pridemore's thirty-three year coal mine employment history. We have held that such history alone cannot support a link between coal dust exposure and an impairment, see Stiltner v. Island Creek Coal Co., 86 F.3d 337, 339-44 (4th Cir. 1996), or establish the cause of the miner's disability. See Hicks, 138 F.3d at 535.

Peabody next argues that the medical reports submitted by Drs. Daniel and Gaziano, upon which the ALJ also relied, are of no aid to Pridemore in satisfying his burden of proof. We agree that these medical reports also fail to satisfy Pridemore's burden. First, as Peabody correctly points out, the ALJ was barred from relying on Dr. Daniel's opinion because it was submitted prior to the final resolution of Pridemore's previous unsuccessful claim. The DOL's denial of Peabody's earlier claim is final and its factual predicate must be assumed to be correct. See Lisa Lee Mines v. Director, Office of Workers' Compensation Programs, 86 F.3d 1358, 1361-63 (4th Cir. 1996). Second, although Dr. Gaziano's medical report concluded that Pridemore suffers from pneumoconiosis caused by coal mining and cigarette smoking, he provided no explanation for this conclusion, despite completing his report on a DOL form that specifically directed him to provide a rationale for his diagnostic conclusions and to specify the extent to which each diagnosis contributes to the miner's impairment.

3

Because Dr. Gaziano's report is materially incomplete, it is of little or no aid to Pridemore's effort to satisfy his burden of proof.

Because the record contains no other evidence that connects Pridemore's disability to his coal mine employment, we are constrained to reverse the decision of the Board and to remand with instructions to deny benefits.

REVERSED AND REMANDED WITH INSTRUCTIONS

KING, Circuit Judge, dissenting:

Clifford Pridemore seeks benefits under the Black Lung Benefits Act for disability suffered as a result of his protracted employment as a coal miner in southern West Virginia. An Administrative Law Judge ("ALJ"), after careful consideration, awarded Pridemore his sought-after benefits, and the Benefits Review Board ("Board") affirmed the award. Because the record fully supports the decisions of the ALJ and the Board, I dissent from the majority opinion and vote to affirm.

I.

In considering an application for benefits, "[a]n ALJ hearing a claim under the Black Lung Benefits Act is empowered to make credibility determinations and to weigh the evidence presented." Underwood v. Elkay Mining, Inc., 105 F.3d 946, 949 (4th Cir. 1997) (citations omitted). Indeed, the ALJ is entrusted with the authority to "evaluate the evidence, weigh it, and draw his own conclusions." Id. When, as in this case, the ALJ is presented with conflicting medical evidence and conflicting expert opinions, we have recognized that "it is the province of the ALJ to evaluate the physicians' opinions." Island Creek Coal Co. v. Compton, 211 F.3d 203, 211 (4th Cir. 2000).

Of course, in evaluating such opinions and ultimately reaching its decision, the ALJ is required by statute to articulate her "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. § 557(c)(3)(A) (West 1996). As the majority notes, the ALJ must explain why "she credits or discredits the relevant evidence." Ante at

4

3 (citations omitted). And this ALJ did precisely that, articulating her reasons for crediting the opinions of Drs. Rasmussen and Gaziano, and for discrediting the conclusions of the other doctors.**1** Indeed, this ALJ's decision is replete with references to medical tests and findings supporting the two doctors' opinions. Moreover, the ALJ expressly stated her grounds for according less weight to the opinions of Drs. Zaldivar, Fino, and Renn, writing:

> Drs. Zaldivar, Fino and Renn base their conclusions, in part, on the majority of chest x-ray readings which were negative for pneumoconiosis. Dr. Rasmussen more correctly characterized the x-ray evidence as demonstrating mixed interpretations. . . . Under such circumstances, I find Dr. Rasmussen's discussion of the medical studies which show that chest x-ray readings may fail to show the presence of significant pneumoconiosis persuasive. Therefore, I accord less weight to the reports of physicians to the extent they rely on the negative chest x-ray reports of record in determining that coal workers pneumoconiosis is not present.

J.A. 14-15.

Nevertheless, the majority maintains that the ALJ erred in relying on Dr. Rasmussen's opinion, because, in its view, that opinion was not "reliable, probative, and substantial." Ante at 3 (quoting 5 U.S.C. § 556(d)). I simply disagree. A reviewing court may not substitute its

_____

**1** The ALJ found, and the Board agreed, that Pridemore had demonstrated the presence of pneumoconiosis pursuant to 20 C.F.R. § 718.202(a)(4). Under this provision, a claimant may establish the existence of pneumoconiosis by showing that:

> [A] physician, exercising sound medical judgment, notwithstanding a negative X-ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding shall be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function studies, physical performance tests, physical examination, and medical and work histories. Such a finding shall be supported by a reasoned medical opinion.

20 C.F.R. § 718.202(a)(4).

5

view of the evidence for that of the ALJ "merely because it finds the opposite conclusion more reasonable or because it questions the factual basis." Doss v. Director, OWCP, 53 F.3d 654, 659 (4th Cir. 1995) (quoting Smith v. Director, OWCP, 843 F.2d 1053, 1057 (7th Cir. 1988)). Contrary to the majority's conclusion, Dr. Rasmussen's opinion that Pridemore suffered from pneumoconiosis was not based "solely on Pridemore's lengthy coal mine employment history and on several positive chest x-ray readings." Ante at 3. Rather, Dr. Rasmussen relied on several additional factors in reaching his determination, including: (1) his July 15, 1995 medical examination of Pridemore; (2) his review of a blood gas study and a ventilatory examination conducted on the patient; (3) his March 6, 1997 review of the reports of Drs. Zaldivar, Gaziano, Francke, and Ranavaya; (4) studies regarding the reliability of x-ray evidence in establishing the presence of pneumoconiosis; and (5) multiple medical studies indicating that exposure to coal dust may produce disabling chronic obstructive lung disease, independent of any impairment caused by cigarette smoking. Admittedly, neither the x-ray evidence nor Pridemore's extensive occupational exposure to coal dust might have been enough, standing alone, to establish the presence of pneumoconiosis. However, the cumulative impact of the evidence amply supports the ALJ's discretionary decision to credit Dr. Rasmussen's sound medical opinion.**2**

Likewise, Dr. Gaziano's failure to fill in a blank on the DOL form in no way justifies the majority's conclusion that Gaziano's report "is of little or no aid to Pridemore's effort to satisfy his burden of proof." Ante at 4. In this regard, the majority ignores the remainder of the

_____

**2** Based on the ALJ's finding that the x-ray evidence was insufficient to establish the presence of pneumoconiosis under 20 C.F.R. § 718.202(a)(1), which allows a claimant to establish the presence of pneumoconiosis based exclusively on x-ray evidence, the majority would apparently require such evidence to be "removed" from consideration under § 718.202(a)(4). See ante at 3. While insufficient to satisfy § 718.202(a)(1)'s standard of proof, the x-ray evidence is not wholly devoid of probative value. Therefore, the use of the x-ray evidence by physicians diagnosing the presence of pneumoconiosis should not automatically nullify their opinions. See Compton , 211 F.3d at 208 ("[A]ll relevant evidence is to be considered together rather than merely within discrete subsections of § 718.202(a).").

6

DOL form, where Dr. Gaziano expressly listed the factors relied upon in reaching his medical assessment. In addition to his October 26, 1995 physical examination of Pridemore, Dr. Gaziano indicated that his conclusion was also based on: (1) a chest x-ray; (2) a ventilatory study; and (3) an arterial blood gas test. Thus, the majority's insistence that Dr. Gaziano failed to explain the bases of his medical opinion -- merely because he left a blank space on a bureaucratic DOL form -- amounts, quite literally, to an elevation of form over substance.

After considering all the medical evidence, the ALJ found the opinions of Drs. Rasmussen and Gaziano to be the "most persuasive on the issue of the presence of pneumoconiosis." J.A. 16. Accordingly, based on these opinions, the ALJ concluded that Pridemore had established the presence of pneumoconiosis pursuant to § 718.202(a)(4). The ALJ's conclusion was rational, inasmuch as it was supported by substantial evidence. We should not, therefore, disturb it.

II.

Having found that Pridemore demonstrated the presence of pneumoconiosis, the ALJ proceeded to consider whether the remaining eligibility requirements had been satisfied. As the majority notes, once a miner shows that he suffers from pneumoconiosis, he must then prove "(2) that the disease arose out of coal mine employment; (3) that he is totally disabled from performing his usual coal mining work; and (4) that his pneumoconiosis is a contributing cause of his total disability." Ante at 2 (quoting Lane, 105 F.3d at 170). With respect to the second element, the ALJ properly found the rebuttable presumption of § 718.203(b) applicable to Pridemore's claim. That section provides, "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." 20 C.F.R. § 718.203(b). Here, the parties stipulated that Pridemore had worked thirty and one-quarter years in the coal mines of West Virginia.[3] Accordingly, pursuant to the provisions of § 718.203(b), the ALJ presumed that Pridemore's

_____

[3] Social Security records indicate that Pridemore worked forty-four and one-half years in coal mine employment.

7

pneumoconiosis arose out his coal mine employment. Because the doctors relied upon by Peabody and the majority concluded that pneumoconiosis was not present, they did not address whether Pridemore's pneumoconiosis arose out of his coal mine employment. Absent such evidence rebutting § 718.203(b)'s presumption, the ALJ properly found that Pridemore's pneumoconiosis arose out of his work as a coal miner. See Toler v. Eastern Associated Coal Co., 43 F.3d 109, 112 (4th Cir. 1995).

Next, Pridemore must demonstrate that he is totally disabled due to pneumoconiosis. Total disability may be established if a physician, exercising reasoned medical judgment, concludes that a miner's respiratory or pulmonary condition prevents him from engaging in his usual or comparable and gainful employment. 20 C.F.R. § 718.204(c)(4). In this case, the parties do not dispute that Pridemore's condition would prevent him from performing his usual coal mine employment. While the various physicians disagreed as to the diagnosis of Pridemore's disability, they all agreed that he was "totally disabled due to his respiratory or pulmonary condition." J.A. 19.

Finally, pursuant to the provisions of 20 C.F.R. § 718.204(b), Pridemore must prove that his pneumoconiosis is a contributing cause of his total disability. For the reasons set forth above regarding the presence of pneumoconiosis, the ALJ's findings on this element are also supported by substantial evidence. The ALJ properly exercised her discretionary authority as the fact-finder and permissibly credited the opinion of Dr. Rasmussen, who concluded that pneumoconiosis was a contributing cause of Pridemore's total disability.

I respectfully dissent.

8