**Willard M. TOLER, Petitioner,**

v.

**EASTERN ASSOCIATED COAL COMPANY; Director, Office of Workers' Compensation Programs, United States Department of Labor, Respondents.**

No. 94–1632.

United States Court of Appeals,
Fourth Circuit.

Argued Oct. 31, 1994.

Decided Jan. 10, 1995.

**ARGUED:** S.F. Raymond Smith, Rundle & Cooper, L.C., Pineville, WV, for petitioner. Cathryn Celeste Helm, U.S. Dept. of Labor, Washington, DC, for respondent Director; Mark Elliott Solomons, Arter & Hadden, Washington, DC, for respondent Eastern Associated Coal. **ON BRIEF:** Thomas S. Williamson, Jr., Sol. of Labor, Donald S. Shire, Associate Sol., Christian P. Barber, Counsel for Appellate Litigation, U.S. Dept. of Labor, Washington, DC, for respondent Director; Laura Metcoff Klaus, Arter & Hadden, Washington, DC, for respondent Eastern Associated Coal.

Before WILKINS and MICHAEL, Circuit Judges, and PHILLIPS, Senior Circuit Judge.

Vacated and remanded by published opinion. Senior Judge PHILLIPS wrote the opinion, in which Judge WILKINS and Judge MICHAEL joined.

## OPINION

PHILLIPS, Senior Circuit Judge:

Willard M. Toler, a retired coal miner, seeks review of a decision and order of the Benefits Review Board (Board) affirming the

administrative law judge's (ALJ) denial of benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901–945 (Act). Toler argues that the ALJ's finding that he failed to establish a total disability due to pneumoconiosis, as required by 20 C.F.R. § 718.204, was not based on substantial evidence. The Director, Office of Workers' Compensation Programs (Director), nominally a respondent, concurs. We agree. Accordingly, we vacate the Board's order and remand for further proceedings.

## I.

Toler retired from a 42–year career in the coal mines in May 1990 at the age of 62. For most of those forty-two years, Toler worked as a main line motorman. For the last twelve years of his employment, however, Toler worked as a dispatcher, a job that required him to direct traffic via a two-way radio while stationed in an air-conditioned office. Eight months after his retirement, Toler applied to the United States Department of Labor (DOL) for Black Lung benefits, complaining that he had been experiencing progressive difficulties in breathing for fifteen years.

On February 28, 1991, Toler was evaluated by Dr. E.R. Chillag at DOL's direction. Dr. Chillag conducted a thorough examination of Toler, in which he took Toler's medical history, reviewed a chest x-ray and administered pulmonary function and blood gas tests. Dr. Chillag noted that Toler had been smoking a pack of cigarettes a day since 1951 and reported Toler's complaint that he would become short of breath after walking 3 blocks or climbing 10 steps. Dr. Chillag also measured Toler's height at 71 inches. He diagnosed Toler with moderately advanced emphysema and pneumoconiosis. JA 12–15.

DOL denied Toler's claim in June 1991 but notified the potentially responsible employer, Eastern Associated Coal Corporation (EACC), of Toler's application. EACC promptly contested Toler's claim and scheduled Toler for further medical examination by Dr. George Zaldivar. On October 16, 1991, Dr. Zaldivar conducted an arterial blood gas test and two pulmonary function studies, both before and after administration of bronchodilators. Based on the test results, and after measuring Toler as 69.25″ tall, Dr. Zaldivar concluded "that Mr. Toler has emphysema caused by his life-long history of smoking. He does not have coal workers' pneumoconiosis nor does he have any impairment produced by nor related to his occupation. From the pulmonary standpoint he was moderately impaired." JA 18. Lastly, EACC forwarded the medical evidence to Dr. Peter Tuteur for review. In a report submitted in March 1992 Dr. Tuteur concluded that Toler did not suffer from pneumoconiosis but that, as result of his other pulmonary ailments, "he is totally and permanently disabled to an extent that he is unable to complete the tasks of a coal worker." Tuteur added further that pneumoconiosis "has not contributed in whole or in part to [Toler's] disability." JA 41.

A formal hearing was held before ALJ Daniel A. Sarno, Jr. on July 15, 1993. The administrative record contained the reports submitted by Drs. Chillag, Zaldivar and Tuteur. It also included five chest x-rays taken between May 1990 and February 1992, each of which had been read by as many as a dozen physicians.

In a decision and order issued August 31, 1993, the ALJ properly observed that, in order to establish entitlement to benefits under the Black Lung Benefits Act, a claimant must prove by a preponderance of the evidence: (1) that he has pneumoconiosis; (2) that his pneumoconiosis arose out of coal mine employment; and (3) that he is totally disabled due to pneumoconiosis. 20 C.F.R. §§ 718.202–.204. He evidently had little difficulty in finding for Toler on the first two elements of his claim. The ALJ first found that the x-rays were sufficient to establish the existence of pneumoconiosis. He reasoned simply: "Notwithstanding the fact that the majority of the readings are negative, I am persuaded that the Claimant has met his burden of proof under this subsection since each x-ray has been read as positive by at least 4 [Board–Certified Radiologists] and/or B-readers." JA 47. Subsection 718.203(b) provides for a rebuttable presumption that a miner who is suffering from pneumoconiosis and who worked in coal mines for at least 10

years contracted the pneumoconiosis from his coal mine employment. Noting the absence of evidence rebutting the presumption, the ALJ also found for Toler on the second element, viz., that Toler's pneumoconiosis arose out of his work as a coal miner.

■ The greater part of the ALJ's decision involved the third element, which is best understood as consisting of two aspects—that the claimant suffers from total cardiopulmonary disability and that that disability is due to pneumoconiosis. As we explained in *Robinson v. Pickands Mather & Co.*, 914 F.2d 35, 38 (4th Cir.1990), disability is "due to" pneumoconiosis if pneumoconiosis is a "contributing cause" of the miner's disability. For ease of discussion, we term the two elements that together comprise 20 C.F.R. § 718.204 "disability" and "causation."

Section 718.204(c) provides four specific methods for establishing total respiratory disability. In the absence of contrary probative evidence, total disability may be established by any of the following: (1) pulmonary function studies showing qualifying values; (2) arterial blood gas studies showing qualifying values; (3) evidence that the miner has pneumoconiosis and is suffering from cor pulmonale with right-sided congestive heart failure; or (4) a medical report by a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concluding that the miner's respiratory condition prevents him from engaging in his usual coal mine employment or comparable employment. 20 C.F.R. §§ 718.204(c)(1)–(4); *Napier v. Director, OWCP*, 890 F.2d 669, 672 (4th Cir.1989). The ALJ assessed each method in turn.

After recording the results of the pulmonary function studies conducted by Drs. Chillag and Zaldivar, the ALJ stated simply: "None of the pulmonary function studies produced qualifying results. Thus, I find they do not support a conclusion that the claimant is totally disabled due to pneumoconiosis." JA 48. He proceeded to find too that "[n]one of the blood gas study results are qualifying" and that the record contained no evidence of

cor pulmonale. *Id.* Lastly, the ALJ reviewed the diverse medical opinions in the record regarding whether Toler was "totally disabled" within the meaning of the governing regulations, that is whether Toler could engage in his "usual coal mine employment." In the ALJ's view, Dr. Chillag "did not ... specifically opine" whether Toler was totally disabled and, in any event, did not indicate an awareness of the nature of Toler's work as a radio dispatcher. Dr. Zaldivar, who "was aware that [Toler's] last job required no physical labor," did not state whether Toler's "moderate pulmonary impairment" was totally disabling. And Dr. Tuteur did specifically opine that Toler was totally disabled but, like Dr. Chillag, did not "clearly show[ ] that he was aware of" Toler's last relevant work.[1]

Reasoning that Toler "has failed to establish the existence of a totally disabling respiratory or pulmonary impairment through pulmonary function studies, blood gas studies, evidence of cor pulmonale, or the preponderance of the reasoned medical opinions," the ALJ found that Toler did not establish disability. JA 50. He proceeded nonetheless to examine whether Toler had established causation:

> Assuming, *arguendo,* that the Claimant has established the presence of a totally disabling pulmonary impairment, it is the Claimant's burden to establish that the etiology of the total disability was, at least in part, due to pneumoconiosis. I find that the medical opinions of Drs. Chillag, Zaldivar and Tuteur convincingly establish that pneumoconiosis played no part in the claimant's pulmonary disability.

JA 51. Having thus found that Toler had failed to establish either aspect of § 718.204—that he was totally disabled and that pneumoconiosis was a contributing cause of his disability—the ALJ denied him benefits under the Act.

Toler appealed to the Benefits Review Board. The Director did not make an appearance, averring that the issues raised on appeal did not "implicate the Director's re-

---

1. The ALJ also dismissed a 1986 finding by the West Virginia Occupational Pneumoconiosis Board that Toler suffered from a 30% pulmonary function impairment due to pneumoconiosis, as not speaking to the issue of "total disability."

sponsibility for proper administration of the Act." EACC cross-appealed the ALJ's finding that Toler has pneumoconiosis.

On appeal before the Board, Toler did not challenge the ALJ's particular findings that disability was not established under either § 718.204(c)(2) (arterial blood gas studies showing qualifying values) or § 718.204(c)(3) (evidence of cor pulmonale). Accordingly, the Board looked only at the pulmonary function studies and the conflicting medical testimony. Concluding that neither established total pulmonary disability, it held that the ALJ's finding that Toler had not proven that he was disabled was "rational, supported by substantial evidence, and in accordance with law." The Board then affirmed the ALJ's dismissal of Toler's claim for benefits without reaching either Toler's objection to the ALJ's finding on causation or EACC's cross-appeal contending that the ALJ erred in finding pneumoconiosis.

Toler filed a timely petition urging reversal, naming as respondents both EACC and the Director. The Director has responded in Toler's favor, recommending that the ALJ's order denying benefits be vacated and remanded for further proceedings.

## II.

■ The principal issue raised by this petition is whether the ALJ erred in finding that Toler failed to establish both that he is totally disabled and that his disability is due to pneumoconiosis. Before reaching that question, however, we consider EACC's threshold objection that Toler waived his challenge to the ALJ's finding on causation by failing to raise it before the Board. If EACC is correct on this, we would have to affirm the Board, because Toler can prevail in this petition only if we vacate the ALJ's findings on both the total disability and causation elements of § 718.204(a).

It is undisputed that Toler did in fact cite the ALJ's finding on causation as error in his appeal before the Board. EACC contends only that Toler now rests his objection on a somewhat different legal basis. Toler argued below that the ALJ erred "in failing to find that the medical reports of record were insufficient to rule out pneumoconiosis as a contributing cause of his totally disabling respiratory impairment." JA 54 (opinion of the Board, characterizing Toler's claim). As we discuss *infra*, Toler now argues (as does the Director) that the ALJ misread Dr. Chillag's report and improperly credited the reports of Drs. Zaldivar and Tuteur. Both arguments necessarily rely on the assertion that the opinions of Drs. Zaldivar and Tuteur on causation lack probative value. The difference is this: whereas Toler's appeal before the Board could be read to rely upon the (erroneous) belief that a finding of both pneumoconiosis and total disability raises a rebuttable presumption as a matter of law that the latter is due to the former, Toler's instant petition clearly cites Dr. Chillag's report in order to establish that pneumoconiosis is a contributing cause of his total disability.

■ This is an exceedingly subtle distinction upon which to find that Toler has effectively waived his right to judicial review—especially given that the Board never addressed Toler's challenge to the ALJ's finding on causation. As we have explained before, waiver is a nonjurisdictional doctrine that calls for flexible application. *See, e.g., Robinson,* 914 F.2d at 36 n. 3; *Rana v. United States,* 812 F.2d 887, 889 n. 2 (4th Cir.1987). Here, the Board's decision and order suggests that once it affirmed the ALJ's finding that Toler had not established total disability it was unconcerned to engage in a counterfactual inquiry into disability causation. In these circumstances, "the policy reasons behind administrative waiver—preserving the requirement of exhaustion of remedies and respect for the agency's expertise—are simply not present." *Thorn v. Itmann Coal Co.,* 3 F.3d 713, 717 (4th Cir. 1993). Because the record indicates that it would have made no difference to the Board's analysis had Toler cast his objection to the ALJ's finding on causation in more precise (or somewhat different) terms, we hold that Toler did not waive his present argument that the ALJ's finding on causation is not based on substantial evidence.

### III.

We now address Toler's contention that the ALJ erred in finding that Toler failed to prove disability and causation by a preponderance of the evidence. We undertake an independent review of the record, as in the place of the Board, to determine whether the ALJ's factual findings were based on substantial evidence in the record. *Wilson v. Benefits Review Bd.,* 748 F.2d 198, 199–200 (4th Cir.1984). We review questions of law *de novo.*

### A.

■ The question whether Toler has total pulmonary disability turns largely on the pulmonary function study evidence. There were three tests: one conducted in February 1991 by Dr. Chillag, and two conducted in October of that year by Dr. Zaldivar. All parties agree that both the February test and the October pre-bronchodilator test produced qualifying values—if Toler is 71″ tall.[2] Consequently, Toler and the Director argue, the ALJ clearly erred in stating that "[n]one of the pulmonary function studies produced qualifying results."

Although conceding that two of the pulmonary function studies were qualifying if Toler is as tall as Dr. Chillag's measurement indicates, EACC denies that this truth undermines the ALJ's factual finding. EACC advances two arguments. First, EACC emphasizes that the burden of proof as to height, as with all facts, lies with Toler. It is no basis for vacating the ALJ's findings, EACC argues, that Toler failed to carry his burden of proving that he is 71″ tall rather than 69.25″. "Although [the ALJ] did not specifically state that he reached this conclusion [that none of the pulmonary function results were qualifying] by crediting the evidence disclosing Toler's height as 69.25 inches, that is the only conclusion that is possible." EACC Br., at 23–24. We disagree. The more likely inference, we believe, is that the ALJ was simply oblivious to the fact that he could not determine whether the pulmonary function results were qualifying without first resolving the conflict regarding Toler's height. Had he been aware of the need to make a factual finding as to Toler's height, it is inconceivable that he would not have bothered to mention it.[3] And without having expressly found Toler to be the shorter height, the ALJ's finding that Toler did not establish total disability pursuant to § 718.204(c)(1) was not based on substantial evidence.[4] To the contrary, that particular finding was based on a clearly erroneous belief that it was unnecessary to ascertain Toler's "correct" height in order properly to evaluate the pulmonary function studies.

Second, EACC urges that even if the pulmonary function studies could establish total disability, we should affirm the ALJ's order because there is substantial contrary probative evidence in the record to support the ALJ's finding that Toler was not totally disabled. The short response to this argument is that the ALJ did not find that Toler was *not* totally disabled. The ALJ found only that Toler failed to carry his burden of prov-

---

2. According to the Table contained in Part 718, Appendix B, an $FEV_1$ result is qualifying if a male Toler's age (62) produces a value equal to or less than 2.12 if he is 71.3″ tall, or a value equal to or less than 1.97 if he is 69.3″ tall. The February test produced a value of 1.97, which is qualifying if Toler is 71″ tall, as Dr. Chillag found him to be. In addition, the February test produced an FVC value of 3.92. Because 1.97 divided by 3.92 is less than .55, the February test is qualifying under 20 C.F.R. § 718.204(c)(1)(iii).

   For the same reasons, the October pre-bronchodilator test is qualifying if Toler is 71″ tall. That test produced an $FEV_1$ value of 2.07 and an FVC value of 4.25.

3. Seemingly, the Board was equally unaware either that the record contained a discrepancy as to Toler's height or that significant consequences attached to the discrepancy. The entirety of the Board's analysis of Toler's challenge to the ALJ's finding on disability reads as follows:

   > Contrary to claimant's contention, the administrative law judge properly found that the pulmonary function studies conducted by Drs. Chillag and Zaldivar yielded nonqualifying values and thus we affirm his finding that claimant failed to establish total disability pursuant to Section 718.204(c)(1).

   JA 55.

4. This case is thus distinguishable from *Meyer v. Zeigler Coal Co.,* 894 F.2d 902, 906–07 (7th Cir.), *cert. denied,* 498 U.S. 827, 111 S.Ct. 84, 112 L.Ed.2d 57 (1990), where the ALJ recognized a discrepancy in height measurements and specifically found the claimant to be the shorter height.

ing, by any one of the four alternative methods identified in § 718.204(c), that he *was* totally disabled. Because the ALJ did not proceed to make the alternative finding upon which EACC wishes to rely—that, even if one or more pulmonary function studies did demonstrate the presence of a totally disabling respiratory impairment, the physicians' opinions constitute persuasive "contrary probative evidence" that Toler is not totally disabled—the assumption that such a finding could have survived "substantial evidence" review is irrelevant. Because the ALJ has not yet made such a finding, we cannot affirm on the basis that he could have done so. *See SEC v. Chenery Corp.,* 318 U.S. 80, 93–95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).[5]

Therefore, we must direct the Board to vacate the ALJ's finding that Toler did not establish that he is totally disabled.

### B.

■ Toler next challenges the ALJ's hypothetical finding that, even if he does suffer from a totally disabling pulmonary impairment, such disability is not due, even in part, to pneumoconiosis. We have already considered and rejected EACC's contention that Toler has waived this challenge. The remaining question, accordingly, is whether the ALJ's finding is based on substantial evidence and in accordance with law, an issue that the Board did not reach.

The ALJ set forth the basis for his finding that Toler did not establish causation in the sparsest terms. He opined simply "that the medical opinions of Drs. Chillag, Zaldivar and Tuteur convincingly establish that pneumoconiosis played no part in the claimant's pulmonary disability." JA 51. In point of fact, Dr. Chillag's medical opinion was that pneumoconiosis *did* play a part in Toler's pulmonary disability. On the medical exami-

nation form supplied by DOL, Dr. Chillag diagnosed Toler with both "moderately advanced pulmonary emphysema" and "pneumoconiosis." The form further asked for "The extent to which each of the diagnoses ... contributes to the impairment." Dr. Chillag typed: "All." Drs. Zaldivar and Tuteur, it is true, both opined that pneumoconiosis was not a contributing factor to Toler's pulmonary disability. That is hardly surprising, however, given that both doctors determined that Toler did not have pneumoconiosis. For them, a conclusion that Toler's disability was not due to pneumoconiosis was logically determined. To be sure, the ALJ could have agreed with Drs. Zaldivar and Tuteur on both counts. But it is difficult to understand how the ALJ could credit their conclusions as to causation while simultaneously finding that Toler did suffer from pneumoconiosis.

The parties have not cited, and we have not found, any case law addressing whether an ALJ who finds that the claimant established the existence of pneumoconiosis could also find that the claimant did not establish that his disability was due to pneumoconiosis on the strength of the medical opinions of doctors who had concluded that the claimant did not have pneumoconiosis. We have, however, disapproved similarly paradoxical reasoning in analogous circumstances. Most notably, we held in *Grigg v. Director, OWCP,* 28 F.3d 416, 419 (4th Cir.1994), that a medical opinion that a claimant does not have a respiratory or pulmonary impairment cannot rebut the interim presumption, raised by a chest x-ray showing pneumoconiosis, that the claimant was totally disabled due to pneumoconiosis, where the physician premised his opinion on a determination that the claimant does not have pneumoconiosis. *See also Garcia v. Director, OWCP,* 869 F.2d 1413, 1416–17 (10th Cir.1989) (holding that a physi-

---

5. It bears mention that there is medical evidence in the record that would support a finding that Toler is "totally disabled" within the meaning of the governing regulations notwithstanding the physically undemanding nature of his work as a dispatcher. As the ALJ acknowledged, Dr. Tuteur opined that Toler was "totally and permanently disabled to an extent that he is unable to complete the tasks of a coal worker." The ALJ proceeded to assert, however, that "[w]hile Dr.

Tuteur did note that the Claimant's last coal mining job was as a dispatcher, there is *no indication* that he was aware of the exertional requirements of that job." JA 50 (emphasis added). That is an overstatement. Dr. Tuteur specifically stated that he reviewed the January 1992 report prepared by Dr. Zaldivar, a report that provided a detailed description of Toler's duties as a dispatcher.

cian's opinion attributing qualifying blood gas test results to nonrespiratory causes could not constitute substantial evidence to rebut causation where the physician's conclusions were based on an erroneous finding that the claimant did not suffer from pneumoconiosis).

■ We need not decide whether, as Toler and the Director urge, a physician's opinion that a claimant's disability is not "due to pneumoconiosis" within the meaning of § 718.204 and *Robinson* is wholly lacking in probative value when the doctor has concluded that the claimant does not suffer from pneumoconiosis and the ALJ has found to the contrary. Clearly though, such opinions can carry little weight. At the very least, an ALJ who has found (or has assumed *arguendo* ) that a claimant suffers from pneumoconiosis and has total pulmonary disability may not credit a medical opinion that the former did not cause the latter unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon her disagreement with the ALJ's finding as to either or both of the predicates in the causal chain.

In the present circumstances, once the opinions of Drs. Tuteur and Zaldivar are properly discounted (if not discarded) and considered together with Dr. Chillag's, it becomes clear that the ALJ's conclusion "that the medical opinions of Drs. Chillag, Zaldivar and Tuteur convincingly establish that pneumoconiosis played no part in the claimant's pulmonary disability" is not based on substantial evidence. Consequently, we must vacate the ALJ's finding that pneumoconiosis did not contribute to Toler's pulmonary disability.

### IV.

For the foregoing reasons, we conclude that the ALJ's findings that Toler failed to establish both that he has total pulmonary disability and that his disability is due to pneumoconiosis, as is required by 20 C.F.R. § 718.204(c)(1), are not supported by substantial evidence and in accordance with the law. We therefore vacate the Board's order affirming the decision of the ALJ and order that it remand the case to the ALJ for further proceedings.

On remand, the ALJ should specifically make a finding as to Toler's height at the time of the pulmonary function studies. If the ALJ determines that Toler was 71″ tall, then he must assess contrary probative evidence in the record in order to conclude whether Toler has established that he is totally disabled within the meaning of the Act and regulations. If the ALJ determines that Toler was 69.25″ tall, then he may—but need not—proceed to find that Toler has failed to establish total disability without considering contrary probative evidence.[6]

6. The Director argues that the February pulmonary function study qualifies even if Toler is 69.25″ tall. That height falls between the heights listed in the Table—68.9″ and 69.3″. The Director's OWCP Program Manual, which governs DOL's practices and procedures under the Act, specifically mandates using the closest greater height when a miner's actual height falls between two listed heights. *See* Coal Mine (BLBA) Procedure Manual, BLBA Bulletin No. 84–6 (April 11, 1984). Because the February test produced the same $FEV_1$ value as listed in the Table for a height of 69.3″—1.97—use of this procedure would enable Toler to qualify under 20 C.F.R. § 718.204(c) so long as he is taller than 68.9″. The Director urges that his reasonable interpretation of the regulatory ambiguity regarding how to treat unlisted heights is entitled to deference. *See, e.g., Mullins Coal Co. v. Director, OWCP*, 484 U.S. 135, 159, 108 S.Ct. 427, 440, 98 L.Ed.2d 450 (1987); *Shuff v. Cedar Coal Co.*, 967 F.2d 977, 979 (4th Cir.1992).

EACC offers two rejoinders. First, EACC disputes that the Director's internal guidelines bind the ALJ in this or any other case. EACC's principal contention, however, is that the Director has waived this argument by failing to appear before the Board and by failing to file a cross-appeal from the Board's decision. Because this latter issue has not been briefed by either Toler or the Director, we choose not to resolve the difficult questions regarding the contours of the Director's obligation to raise issues before the Board in order to preserve them for judicial review. Accordingly, we decline to decide whether the procedures set forth in the Director's Procedure Manual for evaluating the pulmonary function study results of a miner whose actual height falls between the heights listed in the Tables is binding upon ALJs. Nonetheless, because the proper method for assessing qualifying values for miners of unlisted heights is not immediately obvious, if the ALJ determines on remand that Toler stands between 68.9″ and

Regardless of Toler's height, if the ALJ finds that Toler has total pulmonary disability, he must reconsider his finding on causation, weighing the medical opinions of Drs. Chillag, Zaldivar and Tuteur in accord with the admonitions we have set forth in Part III.B., *supra*. On remand the ALJ should also reexamine his finding that Toler suffers from pneumoconiosis. Given the conflicting evidence in the record, the ALJ should explain more thoroughly the basis for his finding on pneumoconiosis, whatever it may be.

*VACATED AND REMANDED.*

69.3″ tall, he should expressly address the interpretive difficulty here noted.