**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 13-1702**

———————

NORA COLLINS, widow of Johnnie Collins,

        Petitioner,

      v.

POND CREEK MINING COMPANY; DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

        Respondents.

———————

On Petition for Review of an Order of the Benefits Review Board.
(12-0230 BLA)

———————

Argued: March 20, 2014           Decided: May 1, 2014

———————

Before WILKINSON, KING, and FLOYD, Circuit Judges.

———————

Reversed and remanded by published opinion. Judge Wilkinson
wrote the opinion, in which Judge King and Judge Floyd joined.

———————

**ARGUED:** Leonard Joseph Stayton, Inez, Kentucky, for Petitioner.
Rita Ann Roppolo, UNITED STATES DEPARTMENT OF LABOR, Washington,
D.C., for Respondent Director, Office of Workers' Compensation
Programs, United States Department of Labor. Kathy Lynn Snyder,
JACKSON KELLY, PLLC, Morgantown, West Virginia, for Respondent
Pond Creek Mining Company. **ON BRIEF:** M. Patricia Smith,
Solicitor of Labor, Rae Ellen Frank James, Associate Solicitor,
Gary K. Stearman, Counsel for Appellate Litigation, Office of
the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington,
D.C., for Respondent Director, Office of Workers' Compensation
Programs, United States Department of Labor.

WILKINSON, Circuit Judge:

This case is the latest chapter in a long-running dispute between Nora Collins ("Mrs. Collins") and Pond Creek Mining Company ("Pond Creek") regarding her claim to survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. §§ 901-945 (the "Act"). Mrs. Collins petitions for review of an April 2013 decision of the Benefits Review Board ("BRB") affirming the denial of benefits by an Administrative Law Judge ("ALJ"). She challenges the ALJ's ruling that she failed to prove that her husband's pneumoconiosis hastened his death. For the reasons that follow, we reverse the BRB's decision and remand for an award of benefits.

I.

A.

Johnnie Collins ("Mr. Collins") worked in various mining-industry jobs for more than thirty-six years between 1943 and 1983, including at Pond Creek for the last eleven. He was also a regular smoker during this time, though he later quit. When he stopped working for Pond Creek in 1983, Mr. Collins filed a claim for lifetime benefits under the Act.

Five years later, ALJ Lawrence ruled in his favor. See Collins v. Pond Creek Coal Co., No. 85-BLA-5349 (Feb. 25, 1988). Under the Act's implementing regulations, a miner has

2

pneumoconiosis if he meets one of two conditions. He must either have "clinical pneumoconiosis" (a particular set of diseases recognized by the medical community) or "legal pneumoconiosis" (a broader category that includes any chronic lung disease arising out of coal mine employment). See 20 C.F.R. § 718.201(a); Barber v. Director, OWCP, 43 F.3d 899, 901 (4th Cir. 1995). The ALJ determined that although the x-rays did not show Mr. Collins to have clinical pneumoconiosis, the miner did have a chronic respiratory condition known as Chronic Obstructive Pulmonary Disease ("COPD"). Moreover, the best evidence indicated that his work in the coal mines had contributed to this condition. As a result, he was afflicted with pneumoconiosis for purposes of the Act. Determining that the pneumoconiosis had totally disabled Mr. Collins, the ALJ ruled him entitled to benefits. Pond Creek did not appeal, and the mining company provided Mr. Collins the required payments until his death in 1997.

Shortly after Mr. Collins died, Mrs. Collins applied for survivor's benefits pursuant to 30 U.S.C. § 922(a)(2). Pond Creek opposed an award to the widow and asked for a hearing before an ALJ. ALJ Morgan ruled in 2001 that the 1988 ALJ Decision was not entitled to collateral estoppel on the issue of whether Mr. Collins suffered from pneumoconiosis. Upon reweighing the evidence, he concluded that Mr. Collins did not

suffer from pneumoconiosis. After several additional administrative rulings, Mrs. Collins petitioned this court for review.

We vacated the ALJ's denial of benefits. See Collins v. Pond Creek Mining Co., 468 F.3d 213 (4th Cir. 2006). We held that the doctrine of collateral estoppel did indeed apply to the holding of the 1988 ALJ Decision that Mr. Collins suffered from pneumoconiosis due to coal dust exposure. Furthermore, we rejected ALJ Morgan's alternate holding, affirmed by the BRB, that even if Mr. Collins had suffered from pneumoconiosis, Mrs. Collins had failed to establish that Mr. Collins's death was due to the disease. See Collins, 468 F.3d at 223-24. We remanded for further proceedings to determine if pneumoconiosis contributed to Mr. Collins's death.

In the nearly eight years since our decision, this matter has continued to bounce back and forth in the administrative process. There have been three different decisions by two different ALJs and three decisions by the BRB. Most recently, ALJ Lesniak determined in 2012 that Mrs. Collins was not entitled to survivor's benefits. He found that the physicians' opinions relied upon by Mrs. Collins were not sufficiently reasoned or documented to support a finding that Mr. Collins's pneumoconiosis caused his death. The ALJ also refused to consider as supportive of Mrs. Collins the opinions of two

4

doctors for Pond Creek who found that Mr. Collins's death was in fact hastened by COPD, although they believed the COPD was caused by smoking, not pneumoconiosis. The BRB affirmed this ruling in 2013, echoing the analysis advanced by the ALJ. Mrs. Collins has petitioned this court for review.

B.

The arguments of the parties center on the proper weight to be accorded the various medical opinions in the case. A brief review of these opinions is thus necessary.

Dr. Maan Younes, a board certified internist and pulmonologist, was Mr. Collins's treating physician for the last three years of his life. During that period, Dr. Younes often stated in his treatment notes that Mr. Collins suffered from COPD and pneumoconiosis. In Mr. Collins's death certificate, completed less than a week after he died, Dr. Younes stated that his patient had died of "cardiac arrest" due to or as a consequence of "respiratory failure," and that "coal workers' pneumoconiosis" had contributed to the death. J.A. at 194.

Expanding on the earlier form less than two months later, Dr. Younes explained in a letter to the Department of Labor that Mr. Collins had severe coal workers' pneumoconiosis and COPD when he died, requiring hospitalization once or twice a month. He died at home, one day after he insisted on being released from the hospital after his condition had temporarily

5

stabilized. Dr. Younes added that "Mr. Collins had Severe Respiratory Disability from his Coal Workers' Pneumoconiosis and there is no question that his severe Pneumoconiosis is a major contributing factor to his death." J.A. at 162. Dr. Younes then stated the evidence for pneumoconiosis: Mr. Collins's decades of work in the coal mines, the content of his chest x-rays, and his severe pulmonary disease. Hospital records from just nine days before Mr. Collins's death noted the severity of his lung condition, described his history of coal workers' pneumoconiosis, and recommended that doctors not administer aggressive cardiac treatment because of the severity of his pulmonary problems.

Following Mr. Collins's death, the Department of Labor asked Dr. Dominic Gaziano, a board certified internist and pulmonologist, to review the miner's file in early 1998 and answer a questionnaire regarding the circumstances of his death. He filled out the form provided to him, indicating that although the miner did not die from pneumoconiosis, he was disabled by it and that the disease played a role in Mr. Collins's death. Dr. Gaziano further stated in the comments section of the form that Mr. Collins "died as a result of cardio-pulmonary failure in a background of severe heart and lung diseases. I believe C.W.P. [coal workers' pneumoconiosis] was a significant contributing factor in his death." J.A. at 195.

6

For its part, Pond Creek asked seven medical experts to examine Mr. Collins's medical records. Each of the seven doctors found that Mr. Collins did not have pneumoconiosis. Six of the seven reported that Mr. Collins had severe pulmonary disease due to smoking, with at least five of those doctors explicitly classifying the pulmonary disease as COPD. Four of the doctors -- Dr. Gregory Fino, Dr. George Zaldivar, Dr. A. Dahhan, and Dr. Samuel Spagnolo -- stated that the death was due purely to cardiac causes.

Representative of the opinions is that of Dr. Fino, a board certified internist and pulmonologist. Dr. Fino reported that Mr. Collins's x-rays did not show signs of pneumoconiosis, and that his totally-disabling COPD was caused by cigarette smoking, not his work in the mines. Dr. Fino further argued that Mr. Collins's death was due to heart disease, and that even if he had been afflicted with pneumoconiosis, the lung disease would not have exacerbated the particular cardiac condition that caused the death. Dr. Fino thus found not only that Mr. Collins's COPD was unrelated to coal dust exposure, but also that the COPD did not hasten his death.

Of particular note were the opinions of Dr. Thomas Jarboe and Dr. W.K.C. Morgan, both of whom Pond Creek enlisted to evaluate Mr. Collins's file. Dr. Jarboe stated that Mr. Collins was totally disabled by COPD, though the COPD was caused by

7

smoking and not exposure to coal mine dust. He then concluded that Mr. Collins died from a "combination" of his COPD and his cardiac disease. Dr. Morgan also stated that Mr. Collins's COPD was due to smoking. He believed that the miner's death was due to a heart arrhythmia, and that the arrhythmia was exacerbated by an oxygen deficiency known as hypoxemia, which was caused by COPD. Both doctors thus agreed that Mr. Collins's COPD contributed to his death.

## II.

Under the Act, we evaluate whether an ALJ's decision that has been affirmed by the BRB was supported by substantial evidence and in accordance with the law. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 217 (4th Cir. 2006). "Substantial evidence consists of sufficient relevant evidence to convince a reasonable mind that the evidence is adequate to support a conclusion." Scott v. Mason Coal Co., 289 F.3d 263, 267 (4th Cir. 2002). We review the ALJ's and BRB's conclusions of law de novo. Id.

In order for Mrs. Collins to prevail under the Act, she must show that (1) she was the surviving spouse of a miner who suffered from pneumoconiosis, (2) the miner's pneumoconiosis was due at least in part to coal mining employment, and (3) the miner's death was due to pneumoconiosis. See U.S. Steel Mining

8

Co. v. Director, OWCP, 187 F.3d 384, 388 (4th Cir. 1999) (citing relevant regulations). Our previous decision in this case held that the miner had pneumoconiosis due at least in part to his exposure to coal dust. See Collins, 468 F.3d at 223. The parties thus agree that the sole issue before this court is the last of the three prongs: whether Mr. Collins's pneumoconiosis caused his death. A coal miner's death is "due to" pneumoconiosis if the disease was a "substantially contributing cause" of the death. See Bill Branch Coal Corp. v. Sparks, 213 F.3d 186, 190 (4th Cir. 2000) (quoting 20 C.F.R. § 718.205). Moreover, a claimant can prove causation by establishing that pneumoconiosis "actually hastened the miner's death." Id. (quoting Shuff v. Cedar Coal Co., 967 F.2d 977, 979-80 (4th Cir.1992)).

Pond Creek argues that the ALJ correctly held that the opinions of Dr. Younes and Dr. Gaziano were neither well-reasoned nor well-documented. As a result, those opinions could not support a finding that Mr. Collins's pneumoconiosis hastened his death. Furthermore, the mining company argues, the ALJ was also correct in refusing to credit the opinions of Dr. Jarboe and Dr. Morgan as supportive of Mrs. Collins's claim. Because these experts found that Mr. Collins did not suffer from pneumoconiosis, but instead suffered from COPD due to cigarette smoking, their views could not provide support for a finding that Mr. Collins's pneumoconiosis hastened his death. We

9

disagree with Pond Creek and find that the ALJ's decision misapplied our case law and was not supported by substantial evidence.

Our previous decision in this dispute drives our present holding. There, we singled out two critical considerations for an ALJ when evaluating medical evidence. First, we emphasized the importance of the miner's treating physician's opinion, noting that, in a similar case, "[w]e were particularly concerned with the ALJ's wholesale rejection of the diagnosing physician's causation opinion and corresponding overreliance on the non-diagnosing physicians' contrary views." Collins, 468 F.3d at 224; see also 20 C.F.R. § 718.104(d) (instructing ALJs to give added consideration to the opinions of a treating physician, and in particular to focus on the nature and duration of the doctor-patient relationship and the frequency and extent of treatment).

Second, we noted that "even a poorly documented" causation opinion that properly diagnoses pneumoconiosis should carry more weight than those opinions that have denied the presence of the disease. Collins, 468 F.3d at 224 (quoting Scott, 289 F.3d at 270). For instance, in Toler v. Eastern Associated Coal Co., 43 F.3d 109 (4th Cir. 1995), we stated:

> [A]n ALJ who has found (or has assumed arguendo) that
> a claimant suffers from pneumoconiosis and has total
> pulmonary disability may not credit a medical opinion

10

that the former did not cause the latter unless the ALJ can and does identify specific and persuasive reasons for concluding that the doctor's judgment on the question of disability causation does not rest upon her disagreement with the ALJ's finding as to either or both of the predicates in the causal chain.

Id. at 116. Toler further advises that the opinions of those doctors who did not properly diagnose pneumoconiosis can carry, at most, "little weight." Id.

Notwithstanding Toler, the ALJ found that he could not give any weight to the opinions of Dr. Younes or Dr. Gaziano, believing himself constrained by our decision in Sparks, 213 F.3d 186. In that case, we found a doctor's explanation insufficient where he had merely written on a death certificate "[c]oal workers pneumoconiosis, simple" in the blank asking for "[o]ther significant conditions contributing to death," and noted without explanation on an autopsy report that pneumoconiosis was present at the time of death. Id. at 192. We found that the doctor "provided no explanation of how, or if, Mr. Sparks's pneumoconiosis hastened his death." Id. Absent any treatment records or justification, the doctor simply provided an "insufficient," "bald conclusion" devoid of the necessary reasoning. Id.

The ALJ described the opinions of Dr. Younes and Dr. Gaziano as "similarly conclusory," J.A. at 777, but such a view ignores the significant differences between the explanation and

11

documentation in Sparks and in this case. Here, Mr. Collins had been found to be totally disabled by pneumoconiosis nearly ten years before his death, and had been in and out of the hospital regularly due to his severe COPD in the years prior to his death. His treating physician Dr. Younes had compiled copious treatment notes during the three years he was Mr. Collins's doctor, which show both the seriousness of the miner's pulmonary condition and the toll it had taken on his body. In his letter to the Department of Labor, Dr. Younes laid out the details of Mr. Collins's final weeks and months, demonstrating his intricate understanding of his patient's worsening state of health. Meanwhile, Dr. Gaziano stated that his opinion was based on a review of the case file, which at the time included Mr. Collins's treatment history, death certificate, and additional hospital records.

Unlike in Sparks, where a doctor with no significant ties to the patient decreed in a few cryptic words that pneumoconiosis had been a contributing cause of death, Dr. Younes's explanatory letter relied upon a lengthy treatment history and his first-hand observations of the damage the coal-dust-triggered pulmonary disability inflicted upon his patient. The ALJ was mistaken to equate these two fundamentally different situations so as to find that Sparks applied.

12

Unconstrained by the mistaken analogy to Sparks, an evaluation of the opinions of Dr. Younes and Dr. Gaziano shows that they provide sufficient evidence that Mr. Collins's pneumoconiosis hastened his death. It is true that Dr. Gaziano could have explained in more detail the exact manner in which Mr. Collins's pneumoconiosis contributed to his respiratory and cardiac failure. But the opinions, and certainly that of Dr. Younes, were not poorly documented. Whatever their alleged deficiencies, our decisions in Collins and Scott counsel that the physicians' explanations were adequate and entitled to more weight than those physicians for Pond Creek who mistakenly found no presence of the disease at all. Indeed, as the Director has noted, if the opinions were insufficient as a matter of law to prove death causation, as the ALJ claimed, there would have been no reason for us to remand this case for a finding of death causation in our 2006 decision. See Br. of Director, Office of Workers' Compensation Programs, at 25-26. The ALJ erred in according no weight to the opinions of Dr. Younes and Dr. Gaziano.

Furthermore, we note that Dr. Younes and Dr. Gaziano were not the only doctors whose opinions provide support for a finding that Mr. Collins's COPD hastened his death. Dr. Jarboe and Dr. Morgan also both explained the connection between Mr. Collins's COPD and his death. Dr. Jarboe stated that the miner

13

died due to a combination of severe respiratory problems brought on by COPD and heart disease. Dr. Morgan, meanwhile, determined that Mr. Collins had died from an arrhythmia, which was worsened by his hypoxemia, which in turn caused by his COPD. Both doctors agreed that the COPD hastened Mr. Collins's death, though both believed that it was caused by his cigarette smoking and not his work in the mines.

Our ruling in Collins that the 1988 ALJ decision established that Mr. Collins's COPD was caused in part by his pneumoconiosis renders the opinions of Dr. Jarboe and Dr. Morgan incorrect regarding the presence of pneumoconiosis. But crucially, although Dr. Jarboe and Dr. Morgan disagreed with Dr. Younes and Dr. Gaziano about what caused Mr. Collins's COPD, their opinions are in accord that the COPD hastened the miner's death. Under our decision in Toler, these opinions, which did not find the presence of pneumoconiosis, can be accorded only lesser weight. Still, the weight they do carry acts to support the findings of Dr. Younes and Dr. Gaziano regarding death causation. All four doctors agree that Mr. Collins had COPD and that it hastened his death. And crucially, we have earlier held that his COPD qualified as pneumoconiosis. See Collins, 468 F.3d at 224 (noting that due to the 1988 ALJ Decision's finding that Mr. Collins's COPD was caused in part by his work in the coal mines, "Mrs. Collins established the presence of

14

pneumoconiosis"). Thus, contrary to Pond Creek's arguments and the ALJ's ruling below, Dr. Jarboe and Dr. Morgan provide at least some additional support for a finding that Mr. Collins's pneumoconiosis hastened his death.

In fact, the ALJ confirmed multiple times in his opinion that Mr. Collins's COPD was a cause of his death. See J.A. at 776-77. After our 2006 decision, there is no dispute that the miner was totally disabled by pneumoconiosis. The ALJ argued, however, that "it is not a foregone conclusion that this same pulmonary impairment caused miner's death; in fact, many of the physicians in the present case opined that miner's death was purely cardiac, despite his respiratory failure." J.A. at 777.

This reasoning is flawed in two ways. First, there is no support in the record that Mr. Collins suffered from a different pulmonary impairment beyond the COPD that we have already held to be pneumoconiosis. The ALJ's observation that some doctors opined that Mr. Collins's death was purely cardiac in nature provides no support for the presence of a second respiratory problem that may have contributed to his death. Second, the relationship between severe pulmonary impairment and cardiac functioning is well known. The body is an integrated organism. A part can drag down the whole. The ALJ was right to dismiss the possibility of a purely cardiac death, stating that "there is no disputing that miner suffered from, and died of, respiratory

15

failure." J.A. at 777. It is only by relying on this rejected explanation of an exclusively cardiac event that it is possible to avoid the finding of death causation mandated by the record.

III.

Unlike after our previous decision in this case, no factual issues remain to be determined by an ALJ. Mrs. Collins was 62 years old when she first filed her claim. She is now 78. We hold, better late than never, that she has satisfied the test for survivor's benefits: she is the surviving spouse of a miner whose death was hastened by pneumoconiosis due at least in part to coal mine employment. The ravages of her husband's long years in the mines should yield at least the legacy of provision for his surviving spouse. No further factual development is necessary. We reverse the BRB's order and remand with directions to award benefits without further administrative proceedings. See Scott v. Mason Coal Co., 289 F.3d 263, 270 (4th Cir. 2002).

REVERSED AND REMANDED