**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 17-1273**

JANICE F. TRUMP, Widow of Jesse W. Trump,

Petitioner,

v.

EASTERN ASSOC. COAL CORP.; PEABODY INVESTMENTS, INCORP.; DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR,

Respondents.

On Petition for Review of an Order of the Benefits Review Board. (16-0179-BLA)

Argued: March 21, 2018                           Decided: June 15, 2018

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

Petition for review granted and remanded by unpublished opinion. Judge Keenan wrote the opinion, in which Judge Wynn and Judge Floyd joined.

**ARGUED:** Luisa Hernandez, WASHINGTON & LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Petitioner. Leonard H. Gerson, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondents. **ON BRIEF:** Timothy C. MacDonnell, Max Gottlieb, Student Caseworker, Black Lung Clinic, WASHINGTON & LEE UNIVERSITY SCHOOL OF LAW, Lexington, Virginia, for Petitioner. Nicholas C. Geale, Acting Solicitor of Labor, Maia S. Fisher, Associate Solicitor, Gary K. Stearman, Counsel for Appellate Litigation, Michelle S. Gerdano,

Office of the Solicitor, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Respondent.

————————

Unpublished opinions are not binding precedent in this circuit.

BARBARA MILANO KEENAN, Circuit Judge:

Janice Trump (Mrs. Trump), widow of coal miner Jesse Trump (Mr. Trump, or the miner), petitions for review of an order issued by the Benefits Review Board (BRB), which affirmed an Administrative Law Judge's (ALJ) denial of Mrs. Trump's claim for survivor's benefits under the Black Lung Benefits Act, 30 U.S.C. § 901 *et seq.* After several rounds of administrative appeals, the BRB upheld the ALJ's determination that Mrs. Trump's medical expert, Dr. William Houser, rendered a speculative and poorly reasoned opinion regarding the cause of Mr. Trump's death.

Upon our review, we conclude that this basis for discrediting Dr. Houser's opinion is not supported by substantial evidence. We therefore grant the petition for review, and remand the case to the BRB for further proceedings.

I.

Born in 1922, Mr. Trump worked underground as a coal miner for 40 years. He never smoked. In 2001, Mr. Trump filed a claim for black lung benefits (the living miner claim), asserting that he was totally disabled due to pneumoconiosis. Since 2001, numerous arterial blood gas studies (ABGs) performed on Mr. Trump generally showed deteriorating levels of oxygen in his blood, a condition known as hypoxemia. While hospitalized at various times in 2006, the year of his death, the results of four separate ABGs demonstrated severe hypoxemia.

In October 2006, prior to a hearing on his living miner claim, Mr. Trump died of a myocardial infarction, a type of heart attack. At the time of his death, Mr. Trump

3

suffered from myriad physical impairments, including fibrosis, emphysema, diabetes, vascular disease, and coronary artery disease. The physician who performed the autopsy concluded that pneumoconiosis in both lungs contributed to Mr. Trump's death. Mrs. Trump filed the present claim for survivor's benefits (the survivor's claim) against Eastern Associated Coal Corporation (the employer) in December 2006.[1]

In support of both the living miner claim and the survivor's claim, Mrs. Trump offered the 2010 opinion of Dr. Houser, who reviewed Mr. Trump's medical records, including several ABGs. According to Dr. Houser, those ABGs showed "mild" to "marked" hypoxemia. Relevant here, Dr. Houser determined that there were "objective findings of hypoxemia" caused by pneumoconiosis. Dr. Houser explained that individuals like Mr. Trump who show "persistent findings of moderately severe to severe hypoxemia" are expected to have impaired respiratory function. Dr. Houser further concluded that "[h]ypoxemia [] has an adverse effect on cardiac function, and when associated with co-existing coronary artery disease can contribute to precipitating an acute myocardial infarct." Later in his report, Dr. Houser linked Mr. Trump's pneumoconiosis to his hypoxemia, and also linked Mr. Trump's pneumoconiosis to his death from a myocardial infarction. Dr. Houser ultimately concluded that Mr. Trump's "clinical and legal pneumoconiosis was a substantial factor contributing to his death."

---

[1] The employer's parent company has filed for bankruptcy. Accordingly, the Director of the Office of Workers' Compensation Programs (the Director) has assumed responsibility for the defense of Mrs. Trump's claim in this appeal.

4

The employer offered two medical opinions related to both claims.  First, Dr. David Rosenberg offered an opinion after reviewing Mr. Trump's medical and other records.  Dr. Rosenberg found that Mr. Trump suffered from clinical, but not legal, pneumoconiosis.  Dr. Rosenberg concluded that Mr. Trump's death was caused by an acute myocardial infarction related to coronary artery disease, and that pneumoconiosis did not hasten Mr. Trump's death.  Although Dr. Rosenberg acknowledged Mr. Trump's poor ABG results, he reasoned that any hypoxemia Mr. Trump experienced at the end of his life was not related to his exposure to coal dust.   Instead, Dr. Rosenberg opined that Mr. Trump's severe hypoxemia in the year preceding his death was due to other "acute events," and to his cardiac issues in particular.

Dr. George Zaldivar, the second physician offered by the employer, had examined Mr. Trump in 2004, and also had reviewed medical and other records related to his death.  Like Dr. Rosenberg, Dr. Zaldivar opined that Mr. Trump suffered from pneumoconiosis but died of a heart attack unrelated to his coal dust exposure.  Dr. Zaldivar specified that "Mr. Trump would have died exactly when and as he did, even if he had never worked in the coal mines."  According to Dr. Zaldivar, Mr. Trump's poor oxygenation levels during his 2006 hospitalizations were caused by his cardiac problems.[2]

---

[2] In addition to the opinions of Drs. Houser, Rosenberg, and Zaldivar, the record also contains the pathology reports by Dr. Richard Naeye and Dr. Everett Oesterling, as well as the autopsy report by Dr. Fausto Imbing.  These reports are not at issue in this appeal.

5

The ALJ and BRB each have issued three opinions in this case. In his first opinion, issued in 2011, the ALJ awarded benefits on both the living miner claim and the survivor's claim. The ALJ accepted as "well reasoned and well documented" Dr. Houser's opinion that Mr. Trump's pneumoconiosis caused hypoxemia, which in turn resulted in Mr. Trump's total disability for purposes of the living miner claim. Accordingly, the ALJ also concluded that Mrs. Trump automatically was entitled to survivor's benefits under the Act. *See* 30 U.S.C. § 932(*l*). On appeal, the BRB held that the ALJ had failed to provide adequate reasons for discrediting the opinions of Drs. Rosenberg and Zaldivar, and for crediting the opinion of Dr. Houser. The BRB therefore remanded both claims to the ALJ for reconsideration of the medical evidence.

In his second opinion, the ALJ concluded that Mrs. Trump had failed to show that her husband suffered from a total pulmonary disability, and therefore was not entitled to living miner benefits. With respect to the survivor's claim, the ALJ accorded "little weight" to Dr. Houser's opinion regarding Mr. Trump's cause of death, finding that Dr. Houser's opinion was not supported by the medical evidence. In particular, the ALJ reasoned that the objective medical data did not support Dr. Houser's conclusion that Mr. Trump suffered from hypoxemia. The ALJ therefore denied the survivor's claim as well.

On appeal from the ALJ's second opinion, the BRB affirmed the ALJ's denial of the living miner claim. We later denied Mrs. Trump's petition for review of that claim. *See Trump ex rel. Trump v. E. Assoc. Coal Corp.*, 599 F. App'x 117 (4th Cir. 2015) (unpublished).

6

Also in the second administrative appeal, the BRB concluded that the ALJ had applied an improper standard to Mrs. Trump's survivor's claim. The BRB explained that for purposes of a survivor's claim, a claimant need only show that pneumoconiosis hastened the miner's death, and not that the miner was totally disabled due to pneumoconiosis, which is the standard applicable to a living miner claim. The BRB held that the ALJ did not explain adequately his decision to discredit Dr. Houser's opinion, because the ALJ only had rejected Dr. Houser's conclusion that Mr. Trump had suffered from *disabling* hypoxemia, not Dr. Houser's opinion that pneumoconiosis was a substantial factor causing Mr. Trump's death. The BRB thus remanded the survivor's claim to the ALJ for reconsideration of the question "whether Dr. Houser's opinion establishe[d] that pneumoconiosis hastened the miner's death."

In his third and final opinion, the ALJ concluded that Dr. Houser's "report does not support a finding that hypoxemia caused by coal dust exposure hastened the miner's death." Among other reasons, the ALJ cited this Court's opinion in *U.S. Steel Mining Co. v. DOWCP*, 187 F.3d 384 (4th Cir. 1999) (*Jarrell*), and concluded that Dr. Houser's death-causation opinion was unduly speculative. The ALJ pointed to Dr. Houser's statement that hypoxemia together with coronary artery disease "can contribute" to a myocardial infarction, and reasoned that "[t]his statement, by itself" does not establish the cause of the miner's death. The ALJ therefore denied Mrs. Trump's survivor's claim.

In Mrs. Trump's final administrative appeal, the BRB affirmed the ALJ's denial of survivor's benefits. Explaining that the ALJ was entitled to weigh the credibility of Dr. Houser's opinion, the BRB held that the ALJ's determination that Dr. Houser's causation

7

opinion was speculative and poorly reasoned was supported by substantial evidence. The BRB expressly declined to consider the other reasons offered by the ALJ in discounting Dr. Houser's opinion. Mrs. Trump filed this petition for review of the denial of her survivor's claim.

## II.

Mrs. Trump argues that the ALJ improperly used, out of context, a single statement from Dr. Houser's report, namely, that hypoxemia "can contribute" to a myocardial infarction, to discredit Dr. Houser's causation opinion. Mrs. Trump also argues that this Court's decision in *Jarrell* does not govern the present case, because Dr. Houser's opinion was not equivocal.

The Director responds that the ALJ's decision to discredit Dr. Houser was a credibility determination deserving of significant deference. In the Director's view, the ALJ was entitled to find that the reasoning underlying Dr. Houser's causation opinion was weak, and that Dr. Houser did not adequately link hypoxemia with the miner's death.

We agree with Mrs. Trump's position. In our limited review of an order denying black lung benefits, we consider only whether the ALJ's factual findings are supported by substantial evidence and "whether the legal conclusions of the [BRB] and ALJ are rational and consistent with applicable law." *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015) (citation and internal quotation marks omitted). Because it is the ALJ's responsibility to make credibility determinations, we defer to the ALJ's consideration of the proper weight due to conflicting medical opinions. *W. Va. CWP*

8

*Fund v. DOWCP*, 880 F.3d 691, 697 (4th Cir. 2018). To determine whether the ALJ's factual findings are supported by substantial evidence, we "consider whether all of the relevant evidence has been analyzed and whether the ALJ has sufficiently explained his rationale" in crediting or discrediting certain evidence. *Frontier-Kemper Constructors, Inc. v. DOWCP*, 876 F.3d 683, 687 (4th Cir. 2017) (citation and internal quotation marks omitted). Accordingly, "even if legitimate reasons exist for rejecting or crediting certain evidence, the ALJ cannot do so for no reason or for the wrong reason." *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 252-53 (4th Cir. 2016) (citation, internal quotation marks, and brackets omitted).

To establish a claim for survivor's benefits, a survivor of an eligible miner must show that (1) the miner had pneumoconiosis, (2) the pneumoconiosis arose out of coal mine employment, and (3) the miner's death was due to pneumoconiosis. *Collins v. Pond Creek Mining Co.*, 751 F.3d 180, 184 (4th Cir. 2014); 20 C.F.R. § 718.205(a). A death was "due to" pneumoconiosis "if the disease was a 'substantially contributing cause' of the death." *Collins*, 751 F.3d at 184 (citation omitted); 20 C.F.R. § 718.205(b). The causation element thus is satisfied if "pneumoconiosis actually hastened the miner's death." *Collins*, 751 F.3d at 184-85 (citation and internal quotation marks omitted); 20 C.F.R. § 718.205(b)(6).

We conclude that the ALJ's rejection of Dr. Houser's causation opinion as unduly general and speculative is not supported by substantial evidence. The ALJ explained:

> Dr. Houser's report summary stating that clinical and legal pneumoconiosis was a substantial factor contributing to death is not supported by the substance of the report. The report states, "[h]ypoxemia also has an

9

adverse effect on cardiac function, and when associated with co-existing coronary artery disease can contribute to precipitating an acute myocardial infarct." *This statement, by itself*, is insufficient to be determinative as to the cause of the miner's death. *It does not offer an opinion on whether or not the miner's hypoxemia caused or contributed to the miner's heart attack.* Rather, it states generally that hypoxemia "can contribute" to a miner's death. Such is insufficient to support Claimant's burden of showing that the hypoxemia hastened the miner's death.

(Emphasis added) (citing *Jarrell*, 187 F.3d 384).

In focusing on this single statement in Dr. Houser's report "by itself," the ALJ failed to account for the totality of Dr. Houser's opinion. Two sentences earlier in the cited paragraph of his report, Dr. Houser explained that, "*[i]n this particular case*, there are objective findings of hypoxemia" caused by pneumoconiosis (emphasis added). Dr. Houser further discussed the likely effects of that hypoxemia on Mr. Trump's respiratory function.

Additionally, later in his report, Dr. Houser explicitly stated his conclusion that Mr. Trump's "clinical and legal pneumoconiosis was a substantial factor contributing to his death," the immediate cause of which was a myocardial infarction. Dr. Houser further explained that Mr. Trump's hypoxemia was caused by pneumoconiosis. We are left with the firm conviction, contrary to the ALJ's determination, that Dr. Houser did in fact "offer an opinion on whether or not the miner's hypoxemia caused or contributed to the miner's heart attack." By examining a portion of Dr. Houser's report in isolation, the ALJ did not analyze "all of the relevant evidence" or "sufficiently explain[] his rationale" in discrediting Dr. Houser's overall causation opinion. *Frontier-Kemper*, 876 F.3d at 687 (citation omitted); *see also Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 558-59 (4th

10

Cir. 2013) (rejecting employer's contention that a physician "offered only an equivocal, differential diagnosis," because that view relied on certain of the expert's statements out of context and ignored the expert's "clearly expressed opinion").

Our conclusion is not altered by the ALJ's reliance on this Court's decision in *Jarrell*, 187 F.3d 384. In that case, we concluded that a proffered medical opinion did not satisfy the requirement that evidence be "reliable, probative, and substantial" in order to be admitted into the record before an ALJ. *Id.* at 389-90; 5 U.S.C. § 556(d). The expert in *Jarrell* opined that, although "[t]here is no information concerning [the miner's] final events or the exact circumstances of his death" in the record, "*[i]t is possible* that death *could have occurred* as a consequence of his pneumonia superimposed upon his chronic lung disease, including his occupational pneumoconiosis and occupationally related emphysema. It *can be stated* that the patient's occupational pneumoconiosis was a contributing factor to his death." *Jarrell*, 187 F.3d at 387 (emphasis added). We held that the expert's conclusion that it is "possible" that death "could have" occurred for a particular reason was too speculative to be probative on the question of death causation. *Id.* at 390. Moreover, the medical expert in *Jarrell* acknowledged that nothing in the miner's medical records suggested that the miner's terminal cancer was linked to his coal dust exposure. *Id.*

In contrast to the uncertain medical opinion at issue in *Jarrell*, Dr. Houser provided a non-speculative opinion regarding the role that Mr. Trump's coal dust exposure played in his death. Dr. Houser's report, considered in its entirety, leaves no doubt regarding his death-causation opinion. Dr. Houser stated unequivocally his

11

conclusion that Mr. Trump's "clinical and legal pneumoconiosis was a substantial factor contributing to his death."

III.

For these reasons, we hold that the ALJ's conclusions that Dr. Houser did not adequately explain his death-causation opinion, and that the opinion is unduly speculative, are not supported by substantial evidence. Because the BRB declined to consider the ALJ's other reasons for discrediting Dr. Houser's opinion, we remand this case to the BRB to review in the first instance the remainder of the ALJ's decision. *See E. Assoc. Coal Corp. v. DOWCP*, 805 F.3d 502, 510 (4th Cir. 2015) (limiting review to the grounds upon which the BRB relied in its decision).

*PETITION FOR REVIEW*<br>*GRANTED; REMANDED*